IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AMY M. AUSTIN,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )   Case No. CIV-16-161-KEW
                                        )
NANCY A. BERRYHILL, Acting              )
Commissioner of Social                  )
Security Administration,                )
                                        )
            Defendant.                  )

**OPINION AND ORDER**

Plaintiff Amy M. Austin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 37 years old at the time of the ALJ's decision. Claimant completed her high school education and one year of college. Claimant has worked in the past as a quality control consultant. Claimant alleges an inability to work beginning July 11, 2012 due to limitations resulting from peripheral neuropathy and chronic pain in her feet and hands.

**Procedural History**

On August 20, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 14, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding from McAlester, Oklahoma. By decision dated December 8, 2014, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on March 24, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an RFC which found Claimant could work on a regular and continuing basis; and (2) failing to adequately address Claimant's handling

impairments in the RFC.

## RFC Determination

In his decision, the ALJ found Claimant suffered from the severe impairments of chronic lumbar pain, rheumatoid arthritis, lower extremity neuropathy/idiopathic peripheral neuropathy, plantar fasciitis, obesity, urolithiasis, vestibular instability, and depression. (Tr. 47). The ALJ determined Claimant retained the RFC to perform light work except that she required a sit/stand option, defined as a temporary change in position from sitting to standing and vice versa for purposes of comfort without more than one change in position every 20 minutes and without leaving the work station so as not to diminish pace or production; unable to operate foot controls bilaterally; should never climb ladders, ropes, or scaffolds; should avoid unprotected heights and dangerous, moving machinery; should avoid concentrated exposure to extremes of cold and heat; should not more than frequently handle or finger; and should have no more than occasional contact with co-workers, supervisors, and/or the general public. (Tr. 54).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of mailroom clerk, sorters, and electronics worker, all of which he found existed in sufficient numbers in the regional and national economies. (Tr.

62). As a result, the ALJ determined Claimant was not disabled from July 11, 2012 through the date of the decision. Id.

Claimant contends the ALJ failed to consider the combined effect of her impairments upon her ability to maintain work on a regular and continuing basis. Claimant's physician, Dr. James Wight, indicated on January 5, 2012 that Claimant's neuropathy pain would not cause her to be incapacitated for a single continuous period of time. However, he expected her condition to cause episodic flare-ups periodically preventing her from performing her job functions. Under such circumstances, Claimant would be required to be absent from work, Dr. Wight noting, "flares of neuropathy pain may require going home." He expected the frequency of such "flare-ups" to be eleven times per month for a period of four to eight hours per episode. (Tr. 299-300). In fact, Claimant missed two days of work in May 2012 and two days in June 2012 before being terminated in July of 2012. (Tr. 301, 317, 335).

On October 31, 2012, Claimant complained to Dr. Baker Fore of "breakthrough pain" caused by neuropathy in her hands and feet. She experienced trouble with her balance and stumbled. She was given Lipoderm patches for her feet which resulted in a reduction of her pain level from an eight to a six. (Tr. 33). In December of 2012, Claimant reported severe pain in feet and hands and she

6

only experienced about four hours of relief on medication. (Tr. 328). Claimant demonstrated elevated blood pressure in January of 2013 which Dr. Fore found caused her pain to increase. (Tr. 400). She experienced heart problems in April of 2013 and was prescribed an additional Lortab for her pain. (Tr. 397).

Claimant fell in September of 2013 due to a lack of coordination. (Tr. 391). She continued to suffer increased pain in February and March of 2014. (Tr. 386, 433). These problems continued through December of 2014. (Tr. 435-6).

Claimant underwent a consultative examination by Dr. Jack Howard in February of 2013. Dr. Howard found Claimant had reduced range of motion in her lumbar back and bilateral elbows. (Tr. 349, 351).

On July 24, 2013, Claimant underwent an MRI which revealed desiccation and loss of disc space height with minimal disc bulging at T12-L1, L1-2, and L3-4. She also experienced minimal disc bulging and facet arthropathy with minimal neuroforaminal narrowing bilaterally at L4-5. Th MRI showed a posterior annular fissure with a broad-based central protrusion and bilateral facet arthropathy with mild neuroforaminal narrowing bilaterally at L5-S1. (Tr. 380-81).

Claimant wore a lumbar brace in September of 2013. (Tr. 391).

7

Dr. Wight noted decreased sensitivity caused by her peripheral neuropathy. She had decreased range of motion in her lumbar spine. (Tr. 415-16).

On October 25, 2013, Dr. Wight noted Claimant had a mild limp, tenderness in her lumbar spine, and decreased sensation in her hands and feet. (Tr. 353). She suffered from weakness in her hand grasp bilaterally. (Tr. 388).

The vocational expert employed in this case testified that if a worker consistently missed work twice per month, the absences would preclude any competitive employment, including the representative jobs he identified. (Tr. 85).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in

the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). A significant question exists in the medical evidence as to whether this Claimant can consistently maintain light work on a regular and consistent basis. On remand, the ALJ should consider the effects of Claimant's pain and neuropathy upon her ability to consistently maintain employment due to the excessive absences predicted by her treating physician.

**Consideration of Claimant's Handling Impairments**

The ALJ included a restriction in the RFC to no more than frequent handling and fingering. (Tr. 54). The medical evidence demonstrated a consistent and progressive degradation in Claimant's hands. She suffered advancing pain, sensitivity, and weakness over time. (Tr. 388, 394, 396, 430, 432). The ALJ failed to consider the progressive nature of Claimant's hand condition in reaching his RFC. On remand, he should re-evaluate Claimant's hand pain and neuropathy and whether it would reduce the available jobs.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED to Defendant for further proceedings**.

IT IS SO ORDERED this 12th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE